UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GARDEN CITY BOXING CLUB, INC.,
as Broadcast Licensee of the November 27, 2004,
Barrera/Morales Program,

                     Plaintiff,

         -against-

SANTIAGO MANLAPAZ, Individually and as
officer, director, shareholder and/or principal of
BAGUIO CORPORATION and MELPLTO
CORP. d/b/a BARRIO FIESTA RESTAURANT
a/k/a FIESTA BARRIO a/k/a BARRIO FIESTA,
and BAGUIO CORPORATION and MELPLTO
CORP. d/b/a BARRIO FIESTA RESTAURANT
a/k/a FIESTA BARRIO a/k/a BARRIO FIESTA,

                     Defendants.
-------------------------------------------------------------x

**MEMORANDUM and ORDER**

05-CV-3710 (SLT)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★   JUL 2 6 2006   ★

P.M. _____
TIME A.M. _____

**TOWNES, United States District Judge:**

In August 2005, plaintiff, a California corporation owning distribution rights to a boxing event – the November 27, 2004, Barrera/Morales Program (the "Program") – brought this action pursuant to 47 U.S.C. §§ 553 and 605, alleging that defendants unlawfully intercepted the Program and showed it to patrons at the Barrio Fiesta Restaurant in Woodside, Queens. After defendants failed to answer or respond to its complaint, plaintiff filed this motion for a default judgment, seeking statutory damages of up to $10,000 pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II); enhanced damages of up to $100,000 pursuant to 47 U.S.C. §605(e)(3)(C)(ii); and costs and attorneys' fees. For the reasons stated below, plaintiff's motion is granted and judgment shall be entered against defendants, jointly and severally, in the amount of $12,961.25.

## The Consequences of Defendants' Default

"Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, by defaulting in this case, defendants have conceded, *inter alia*, that they (1) "willfully violated 47 U.S.C. § 605(a)" by intercepting plaintiff's signal and/or using an illegal cable converter device to intercept plaintiff's broadcast, First Amended Complaint at ¶¶ 26-28, and (2) violated 47 U.S.C. § 553 by wilfully and illegally intercepting the Program "when it was distributed and shown by cable television systems." *Id.* at ¶ 41-42.[1]

Although defendants have admitted liability under both § 605 and § 553, plaintiff "can recover under only one statute." *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 CV 1042 (GBD) (RLE), 2006 WL 728408, at *1 (S.D.N.Y. Mar. 20, 2006) (Report and Recommendation of Ellis,

---

[1] Plaintiff's First Amended Complaint also alleges upon information and belief that defendants violated 47 U.S.C. § 605(e)(4) by "modif[ying] a device or utiliz[ing] equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for [another] . . . activity" prohibited by 47 U.S.C. § 605(a). First Amended Complaint at ¶ 33-34. However, very similar allegations have been held to be insufficient to create liability under § 605(e)(4). *See, e.g., Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005). As the *Morales* Court noted, "several district courts have recognized [that] . . . § 605(e)(4) . . . is aimed at upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Id.* (internal citations and quotations omitted). Allegations of the sort contained in plaintiff's First Amended Complaint do not support a finding that defendants were "more than 'ultimate consumers' or 'end users' of an illegally modified device, as opposed to 'upstream manufacturers and distributors' of such a device" and, therefore, provide an insufficient factual basis for finding liability under § 605(e)(4). *See id.* Accordingly, to the extent that plaintiff's motion can be read as requesting damages for a violation of § 605(e)(4), this Court declines to award such damages.

M.J.) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). Since

§605(e) provides "far more severe penalties than those of § 553(c)," *International Cablevision,*

*Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), plaintiff has elected to pursue remedies under

§ 605. Plaintiff's Memorandum of Law ("Pl. Memo") at 5.

Damages Under § 605

Section 605(e) provides, *inter alia*, that any person aggrieved by a violation of § 605(a)

can bring a civil action in district court, in which the court:

> (i) may grant temporary and final injunctions on such terms as it
> may deem reasonable to prevent or restrain violations of . . .
> [§ 605(a)];
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding
> reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B)(i)-(iii). Subparagraph (C) permits the recovery of either actual

damages under (C)(i)(I), or statutory damages under (C)(i)(II). Plaintiff expressly requests that

this Court award statutory damages. Pl. Memo at 5.

The statutory damages provision, § 605(e)(3)(C)(i)(II), provides, in pertinent part:

> [T]he party aggrieved may recover an award of statutory damages
> for each violation of [§ 605(a)] . . . in a sum of not less than $1,000
> or more than $10,000, as the court considers just . . . .

In addition, § 605(e)(3)(C)(ii) states:

> In any case in which the court finds that the violation was
> committed willfully and for purposes of direct or indirect
> commercial advantage or private financial gain, the court in its
> discretion may increase the award of damages, whether actual or
> statutory, by an amount of not more than $100,000 for each
> violation of [§ 605(a)] . . . .

3

Although § 605 provides little guidance as to how to set damages within the statutory range, "courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005) (Report and Recommendation of Matsumoto, M.J.) (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)). First, in cases where the exact number of patrons is unknown, courts have awarded flat sums based on what the court considers just. *See, e.g., Entertainment by J & J, Inc. v. Suriel*, No. 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages). Second, "[i]n cases where there is uncontradicted evidence of the number of patrons viewing the match in the establishment, courts have . . . multiplied the number of patrons by a set sum," and have awarded that amount "plus any cover charges or other profits attributable to the unauthorized viewing." *Morales*, 2005 WL 2476264, at *6. The "set sum" varies widely, with some courts awarding as little as $20, *see Time Warner Cable v. Sanchez*, No. 02 Civ. 5855 (GBD)(FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), and some courts awarding as much as $300, *see Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005).

Plaintiff urges this Court to adopt the approach used in *Garden City Boxing Club, Inc. v. Fernandez*, No. 05-CV-945 (SLT), in which this Court awarded a flat sum of $5,000 in statutory damages. *See* Pl. Memo at 6. However, contrary to plaintiff's assertion, *Fernandez* was not

4

"factually similar" to this case. Indeed, the facts in *Fernandez* were unusual in that the "establishment" in that case was neither a restaurant nor a bar, but a small grocery store. Although the store was occupied by 16 people throughout the four minutes the investigator was present, the peripatetic nature of shoppers, coupled with uncertainty as to how many of the shoppers were merely shopping and how many were watching the fight, made it impossible to estimate the number of patrons who watched the program. Accordingly, this Court opted for the "flat sum" approach in *Fernandez*, awarding $5,000 in statutory damages, but only $5,000 in enhanced damages.

In this case, unlike *Fernandez*, it is possible to determine the number of patrons watching the Program. Plaintiff's papers include a "Piracy Affidavit," executed by an investigator who visited the Barrio Fiesta Restaurant for two minutes during one of the preliminary matches and observed 25 people in the 75-seat establishment. Although it is entirely possible that more patrons arrived thereafter to view the main event, this Court declines to speculate that this, in fact, occurred. Since plaintiff has adduced evidence that the residential price for viewing the Program was $54.95, *see* Plaintiff's Affidavit for Default at ¶ 10, this Court will award that amount with respect to each of the 25 patrons who presumably elected to visit defendants' establishment rather than pay to watch the Program at home. Plaintiff is therefore awarded statutory damages of $1,373.75.

Plaintiff is also entitled to enhanced damages. It is beyond question that the § 605(a) violation "was committed willfully and for purposes of direct or indirect commercial advantage." § 605(e)(3)(C)(ii). After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d at 490.

5

However, in awarding enhanced damages, courts have borne in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006). In this case, an award of $10,000 in enhanced damages should suffice to prevent defendants from repeating their conduct.

Attorneys' Fees and Costs

Section 605(e)(3)(B)(iii) expressly provides that a court "shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails." Relying on this language, courts in this Circuit have repeatedly held that "under Section 605 the award of costs and attorneys' fees is mandatory." *Polanco*, 2006 WL 305458, at *4; *see also Morales*, 2005 WL 2476264, at *9. However, a party seeking attorneys' fees must nonetheless "support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done." *Morales*, 2005 WL 2476264, at *9 (internal quotations and citations omitted).

Plaintiff's counsel has provided the required documentation. This Court has carefully reviewed the time records, which indicate that plaintiff's attorney spent five and one-half hours on this case, and that a paralegal spent four hours. With the exception of the one and one-quarter hours of attorney's time and the one and one-half hours of paralegal's time spent to correct a defect in the original complaint, the time spent on this case appears to be reasonable.[2] In

---

[2]Although the original complaint named Santiago Manlapaz as a defendant, this pleading contained no substantive factual allegations whatsoever concerning Mr. Manlapaz. On October 17, 2005, plaintiff amended the complaint to rectify this defect. Since it appears that the amendment was necessary because of an oversight on the part of plaintiff's counsel, this Court declines to award attorneys' fees or costs relating to this amendment.

6

addition, although plaintiff's counsel has not attached a copy of her curriculum vitae, this Court is aware, based on its own research in this case, that plaintiff's counsel is very experienced in handling cases of this sort. Her fee of $200 per hour, and the $75 per hour fee she charges for her paralegal's time, are both well within the range awarded in this district. *See, e.g., Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates" and from $60 to $75 for paralegals). Accordingly, plaintiff is awarded attorneys' fees totaling $1,037.50.

With respect to costs, plaintiff is entitled to recover both the $250 filing fee and the $300 it cost to serve the original summons and complaint on the defendants.[3] However, there is a substantial question as to whether plaintiff is entitled to recover the $350 fee charged by the investigator who visited the Barrio Fiesta Restaurant on November 27, 2004.

A plaintiff is entitled to recover its "full costs" under § 605(e)(3)(B)(iii). As this Court recently explained in *Kingvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59, 67 (E.D.N.Y. 2006), "full costs" both differ from, and can exceed, the "taxable costs" recoverable under 28 U.S.C. § 1920. Although the awarding of "full costs" is mandatory, *see, e.g., Polanco*, 2006 WL 305458, at *4, "[t]he legislative history for § 605(e) instructs that the court has the power to direct the recovery of investigative fees, not that the court is required to order such an award." *International Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 918 (W.D.N.Y. 1997).

---

[3]For the reasons stated in footnote 2, *ante*, this Court declines to award costs incurred in serving the First Amended Complaint.

In order to recover investigative costs a plaintiff must make a showing similar to that required to recover attorneys' fees. *Id.* ("a request for investigative fees pursuant to §605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected"). Thus, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." *Id.*

In this case, the documentation supplied by plaintiff's counsel is insufficient. Although the investigator's invoice (attached as Exhibit D to Plaintiff's Affidavit for Default) indicates that Signal Auditing, Inc., charged plaintiff $350 for the investigator's time, plaintiff has not adduced any evidence concerning the investigator's hourly rate or qualifications. Even assuming that Signal Auditing, like investigators employed by plaintiff in other cases, charged $350 per hour, this rate would exceed the rate usually awarded to experienced attorneys in this district. *See, e.g.,* *LaBarbera v. J.E.T. Resources, Inc.,* 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (rates of $250 to $350 per hour are unreasonably high for legal services in this district). Moreover, if Signal Auditing were charging plaintiff for an entire hour, there would be nothing to indicate how the investigator spent most of this time. The investigator's own "Piracy Affidavit," which indicates that the investigator was inside the Barrio Fiesta Restaurant for two minutes and took two photographs of the exterior of the restaurant one minute after exiting, only accounts for three minutes. Furthermore, if Signal Auditing was charging plaintiff $350 for three minutes of work, the investigator's fee would be nothing short of outrageous.

Because of these deficiencies in the evidence concerning the investigative costs, this Court declines to award such costs. Accordingly, plaintiff is hereby awarded costs of $550.00.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a default judgment is granted.

Defendants shall be jointly and severally liable to plaintiff for $1,373.75 in statutory damages

pursuant to § 605(e)(3)(C)(i)(II); $10,000 in enhanced damages pursuant to § 605(e)(3)(C)(ii);

$1,037.50 attorneys' fees and $550 in costs. Accordingly, the Clerk of Court is directed to enter

judgment in favor of plaintiff and against defendants, jointly and severally, in the total amount of

$12,961.25.

**SO ORDERED.**

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
      July /8, 2006